**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRODERICK K. RAINEY** | **CIVIL ACTION** |
| **VERSUS** | **NO:    25-2047** |
| **MARATHON PETROLEUM COMPANY LP** | **SECTION: KWR** |

## ORDER & REASONS

This matter is before the Court on consent of the parties. R. Doc. 11. Before the Court is Defendant's **Marathon Petroleum Company LP's ("Marathon") Motion to Dismiss Plaintiff's Complaint (R. Doc. 8)**, seeking dismissal of the Plaintiff's claims under the Americans with Disabilities Act ("ADA") pursuant to Federal Rule of Civil Procedure 12(b)(6). The Motion is opposed. R. Doc. 17.

### I.    Introduction

#### A.  Factual Summary

Plaintiff Broderick K. Rainey ("Rainey") suffers with chronic kidney disease and IgM nephropathy, an autoimmune disorder that causes kidney damage and related problems. R. Doc. 1 at 4.  Rainey treated his nephropathy through a combination of medication, regular doctor's visits for blood work, and self-administered peritoneal dialysis once per day either manually or using a portable machine. *Id.* at 5.

Rainey was to begin employment with Marathon Petroleum Company LP ("Marathon") in 2023 as a professional light product transport driver in Garyville, Louisiana. R. Doc. 1 at 3, ¶¶8. According to the Complaint, his full-time employment was conditioned upon him passing a pre-employment physical. *Id.* at 6, ¶29. On April 12, 2023, Marathon rescinded his job offer claiming he failed the pre-employment physical. *Id.* at 7, ¶36.

1

On November 8, 2023, within 300 days of the revocation of Rainey's employment offer he filed an EEOC Charge of Discrimination.[1] *Id.* at 3, ¶12. On July 3, 2025, the EEOC issued a notice of right to sue to Rainey. *Id.*, ¶13.

Rainey alleges that his condition was well controlled with dialysis and therefore did not limit his ability to perform all the essential duties of the job offered by Marathon. R. Doc. 1 at 5, ¶22. Rainey also alleges that he was medically cleared to work in his job assignment and that he did not have any restrictions. *Id.*, ¶23-24. Alternatively, Rainey alleges that he was capable of performing the job with reasonable accommodations of periodic rest breaks and time off to attend routine doctor's appointments or perform dialysis on himself between shifts. *Id.*, ¶28. Rainey alleges that he objectively and medically passed the pre-employment physical and satisfied all DOT regulatory requirements to be deemed physically qualified to drive a commercial vehicle. *Id.* at 6-7, ¶31-32.

Rainey contends that his job offer was revoked due to bias against his kidney disease and dialysis treatment protocol. *Id.* at 7, ¶¶34-36. Rainey claims that Marathon accepted the physicians assistant's examination report without objective or medical substantiation. *Id.* at 34-36, ¶13. Rainey alleges that after the alleged discrimination he suffered significant out of pocket expenses, damages, costs and attorney's fees. *Id.* at 11, ¶47. He filed the instant suit against Marathon under the Americans with Disabilities Act on September 30, 2025. *See* R. Doc. 1.

**B. Subject Motion**

Marathon filed the subject motion and contends that Plaintiff's own allegations conclusively establish that he was not a qualified individual with a disability under the Americans with Disabilities Act ("ADA"). R. Doc. 8 at 1. According to Marathon, Rainey's allegations

---

[1] The EEOC field office has a work sharing agreement with the Louisiana Commission on Human Rights ("LCHR"). R. Doc. 1. LCHR automatically accepted the filing and referred it to EEOC for processing.

establish that he (1) failed to pass the U.S. Department of Transportation's mandatory medical examination, (2) did not obtain a medical variance, and (3) did not challenge the certification decision through the U.S. Department of Labor's dispute resolution process. *Id.* Marathon contends that an employer must comply with federal safety regulations before considering to conduct an ADA reasonable accommodation analysis. *Id.* Further, Marathon contends that the Complaint fails to allege that Rainey requested a reasonable accommodation or that Marathon denied one. *Id.*

Plaintiff opposes the motion and contends that he has plausibly alleged that Marathon through its employees unreasonably and without any objective medical justification refused to certify him as medically fit to drive a truck under 49 C.F.R. § 391.41. R. Doc. 17 at 1. Rainey contends that assuming that his allegations are true, Marathon deferred to its medical employee's facially unjustifiable medical determination regarding his fitness for duty and engaged in a "garden variety" of disability bias against him because he has kidney disease that required peritoneal dialysis *Id.* at 2. Notwithstanding his diagnoses, Rainey claims that there was otherwise no objective medical determination that he was not fit for the job. *Id.* at 3. Therefore, Rainey contends that the Motion to Dismiss should be denied.

## II.    **Standard of Review**

Under Rule 12(b), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or for failure to state a claim upon which any relief may be granted. *See* Fed. R. Civ. P. 12(b)(1); *see also* Fed. R. Civ. P. 12(b)(6). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. American Public Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Moreover, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and "[t]he plaintiff must plead enough facts to state a claim to relief that is plausible on its face." *Guidry*, 512 F.3d at 180 (citations omitted). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Twombly*, 550 U.S. at 570). In order for a claim to be plausible at the pleading stage, the complaint need not

4

strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

Further a complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. *See Twombly*, 550 U.S. at 555-56. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558. However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissal with prejudice, " unless it is clear that the defects are incurable. *Great Plaints Trust Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 329 (5th Cir. 2002).

### III.    Analysis

#### A.  Qualified Individual

Marathon first contends that Rainey is not a qualified individual with a disability by the ADA. R. Doc. 8-1 at 5. Marathon contends that Rainey's pleadings affirmatively demonstrate that he was categorically disqualified under binding federal regulations governing commercial motor vehicle drivers. *Id.* at 5-6. Marathon therefore maintains that his inability to satisfy the DOT medical certification requirements renders him unqualified as a matter of law. *Id.* at 6. Marathon further claims that Plaintiff did not obtain a medical variance and did not challenge the medical provider's conclusion through DOT's dispute resolution process. *Id.* at 7

Rainey contends that he has plausibly alleged Marathon unreasonably and without any medical justification refused to certify him as medically fit to drive a truck under 49 C.F.R. § 391.41 *et. seq.* after offering him the job. R. Doc. 17 at 1 Rainey contends that Marathon wrongly deferred to its medical employee and his report. *Id.* at 18. Rainey contends that Marathon knew or

should have known that relying on a facially faulty medical opinion to deny DOT certification for a non-mandatorily disqualifying condition was improper and violative of the ADA. *Id.* at 2.

Under 49 C.F.R. § 391.11, "[a] person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle." The regulation further states that "a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle." *Id.* Among the requirements for qualification is the obligation to be deemed "physically qualified" in accordance with the FMCSR's[2] "Physical Qualifications and Examinations." 49 C.F.R. § 391.11(b)(4); *see also* 49 C.F.R. §§ 391.41-391.49.

Per 49 C.F.R. § 391.41(b)(9), an individual is not physically qualified if they suffer from a condition that is "likely to interfere with his/her ability to drive a commercial motor vehicle safely." To drive commercially, an applicant must either pass the physical examination or obtain a formal medical variance from the FMCSA[3] under 49 C.F.R. § 391.41(a)(3)(ii). Indeed, "courts have consistently held that an employment action based upon an employee's or prospective employee's inability to satisfy DOT medical standards does not violate disability discrimination laws." *Williams v. J.B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016) (collecting cases) (quoting *Talbot v. Md. Transit Admin.*, No. WMN-12-1507, 2012 WL 5839945, at *2 (D. Md. Nov. 15, 2012)).

Commercial drivers' ADA claims were rejected, where a doctor found the plaintiff medically unqualified, and the plaintiff did not obtain a contrary opinion through the DOT's administrative process. *See Harris v. P.A.M. Transp., Inc.,* 339 F.3d 635, 637-39 (8th Cir. 2003) (where the court affirmed summary judgment and dismissal of plaintiffs' ADA claim because he did not present prima facia evidence that he was qualified to perform the job function of a

---

[2] Federal Motor Carrier Safety Regulations
[3] Federal Motor Carrier Safety Administration

commercial truck driver.); *see also Bay v. Cassens Transp.* Co., 212 F.3d 969, 973–76 (7th Cir. 2000) (explaining that "[u]nder applicable DOT regulations, Cassens was not allowed to permit Bay to resume driving until he produced a copy of a doctor's certificate indicating he was physically qualified to drive, and nothing in the ADA purports to change that obligation.").

49 C.F.R. § 391.41(b) provides that a person is physically qualified to drive a commercial motor vehicle if that person-

1. Has no loss of a foot, a leg, a hand, or an arm or has been granted a skill performance evaluation certificate pursuant to §391.49;

2. Has no impairment of :

    i.  hand or finger interfering with prehension or power grasping;

    ii. an arm, foot or leg that interferes with the ability to perform normal tasks associated with operating a commercial motor vehicle; ….

49 C.F.R. § 391.41(d)(3) further provides that:

(i)   The medical evaluation summary for a driver applicant disqualified under § 391.41(b)(2) shall include:

(A) An explanation as to how and why the impairment interferes with the ability of the applicant to perform normal tasks associated with operating a commercial motor vehicle;

(B) An assessment and medical opinion of whether the condition will likely remain medically stable over the lifetime of the driver applicant; and

(C) A statement by the examiner that the applicant is capable of demonstrating precision prehension (e.g., grasping and manipulating knobs and switches using the fingers/thumb) and power grasp prehension (e.g., grasping, holding, and maneuvering the steering wheel using a hand) with each hand separately. Prior to applying for an SPE certificate, an applicant with upper limb impairment must be fitted and proficient with a proper prosthesis or orthotic device, if the applicant is not capable of demonstrating precision prehension and power grasp prehension with each hand separately without a prosthesis or orthotic device. This requirement does not apply to an individual who was granted a waiver, absent an orthotic device, prior to January 6, 1986, the effective date of the requirement.

Marathon contends that because the Plaintiff failed his DOT examination, he is not qualified to work as a driver for Marathon. R. Doc. 8-1 at 6. In assessing whether Rainey was qualified or not as a driver, a central question is whether Marathon's medical provider complied with 49 C.F.R. § 391.41(d)(3)(ii) which required a summary of how Rainey's impairment interfered with his ability to operate a commercial motor vehicle, the stability of his medical condition and Rainey's ability to demonstrate precision prehension, power grasp prehension. However, the record is devoid of any evidence that the medical provider complied with the regulations and nor is this information contained in the pleadings. FMCSA regulations also do not expressly prohibit people who suffer with an autoimmune disease, nephropathy or kidney disease from working as a driver.[4]

Therefore, whether the evaluating doctor's assessment was reached in an individualized manner cannot be gleaned from the pleadings.  As noted by the Court in *Rodrigues v. ConAgra Grocery Products Co.,* 436 F.3d 468, 477 (5th Cir. 2006), an assessment not reached in an individualized manner is not an assessment that can be credited, at least regarding whether Rainey was actually substantially limited by his autoimmune and kidney disease.

Marathon relies on *Williams*, for the proposition that because Rainey failed a medical examination and did not request or receive a medical variance, he cannot assert an ADA claim. 826 F.3d at 806. However, *Williams* is distinguishable from the subject case. First, *Williams*

---

[4] According to the regulations, only people with diabetes mellitus treated with insulin, myocardial infarction, angina pectoris, coronary insufficiency, thrombosis or any other cardiovascular disease accompanied with syncope, dyspnea, collapse or congestive heart failure are not qualified to drive. 49 C.F.R. § 391.41(b)(1)-(9). Additionally, people with rheumatic, arthritic, orthopedic, muscular, neuromuscular or vascular disease that interferes with his ability to control or operate a commercial vehicle or epilepsy or another condition likely to cause loss of consciousness are not qualified to drive. *Id.* Any person with an established history of a mental, nervous, organic, or functional disease or psychiatric disorder that is likely to interfere with his ability to operate a commercial vehicle is not qualified to drive. Additionally, any person without a hearing aid that could not hear a forced whisper or who is on an amphetamine, or other habit-forming drug or any non-Schedule 1 drug is not a qualified individual. *Id.*

suffered from a cardiovascular disease accompanied by syncope,[5] which is expressly defined as a disqualification under FMCSA. *See id.* at 808; 49 C.F.R. § 391.41(b)(4). In this case, the medical condition Rainey has been diagnosed with is not expressly identified in the regulations as preclusive as it was in *Williams*. Also as stated previously, the pleadings do not provide insight on what data the physician relied upon in concluding Rainey was not a qualified driver. Further, *Williams* expressly stated that "no statute requires that an ADA plaintiff exhaust the § 391.47 process before filing a lawsuit." 826 F.3d at 806; *see also Caldera v. Ins. Co. of the State of Pa.,* 716 F.3d 861, 867 n.11 (5th Cir. 2013)*; Premiere Network Servs., Inc. v. SBC Commc'ns, Inc.,* 440 F.3d 683, 686 n.5 (5th Cir. 2006). Likewise, Rainey claims that he reached out to DOT for guidance, and that DOT explained that a medical exemption or variance was not necessary because "FMCSR do not have mandatory prohibitions for medical certification of commercial motor vehicle (CMV) drivers who receive dialysis treatments." R. Doc. 1 at 7.

Lastly, *Williams* was decided on summary judgment grounds. 826 F.3d at 813. The Court notes that the Plaintiff attached additional documents in opposition to the motion. However, given the pleadings before the Court, the complaint states a claim as written that he was a qualified person under the FMCSA. The Court will not convert the matter to a summary judgment which would allow for the review of additional information. The Fifth Circuit has explicitly recognized that a court may consider documents attached not only to the pleadings, but to the Motion to Dismiss under rule 12(b)(6). For this exception to apply, the documents must be referred to in the complaint and be integral and central to the plaintiff's claim. S*ee Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000). Here, the documents were not referred to in the

---

[5] Fainting

complaint and are otherwise not needed for assessing whether the complaint states a cause of action. For these reasons, the Court finds that the **Motion to Dismiss is DENIED**.

### B. Failure to Accommodate Claim

Marathon next contends that Rainey's reasonable accommodation claim independently fails and must be dismissed for lack of any plausible allegation that accommodation was requested.  R. Doc. 8-1 at 10.  Marathon contends that it is not required to guess at an applicant's needs or initiate the interactive process in the absence of a result. *Id.* at 10-11.

Rainey contends that Marathon's request to dismiss Rainey's failure to accommodate and regarded as disabled claims are premature under Rule 12. R. Doc. 17 at 22. Rainey contends that to the extent that Marathon denied Rainey's medical certification, then it was Marathon who was in a position to make any reasonable accommodation absent an undue burden. *Id.*

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." *Id.* § 12112(b)(5)(A). "A Plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).  However, a plaintiff must plead that the defendant had "actual knowledge that an accommodation is necessary." *J. W. v. Paley,* 81 F.4th 440, 450 (5th Cir. 2023).

10

In the Complaint, Rainey alleges Marathon, through the decision-making of its medical and human resources employees, revoked Rainey's job offer because Marathon refused to offer Rainey a reasonable accommodation that would have permitted him to perform all the essential job duties of a light products transport driver. R. Doc. 1 at 9, ¶44. Rainey also alleges to the extent that anything related to his kidney disease or dialysis interfered with his job duties, multiple reasonable accommodations existed that would have allowed Rainey to perform his job without any undue burden on Marathon. *Id.* at 10. Such accommodations included but were not limited to permitting Rainey occasional time off from work or rest breaks so he could attend routine doctor's appointments and perform dialysis on himself between shifts. *Id.* Lastly, Rainey alleges that Marathon's failure to accommodate Rainey, or to even engage in the interactive process with him on these points, was wholly unreasonable and without objective or medical reason whatsoever. *Id.* at 11.

Although Rainey did not formally request an accommodation as suggested by the Marathon, the Complaint does allege that Marathon, through its medical and human resources employees, revoked his job offer and refused to offer Rainey reasonable accommodation that would have allowed him work. *See.* R. Doc. 1 at 9, ¶44. These allegations address the second requirement for a pleading to state a failure to accommodate claim. *See Ball v. LeBlanc,* 792 F.3d 584, 596 n.9 (5th Cir. 2015); *see also G.W. v. Whitehouse Independent School District*, 2026 WL 788865 (E.D. Tex. Mar. 20, 2026) (where a motion to dismiss was denied because the plaintiff adequately alleged the second element by alleging that she or her grandchild made his disability and its resulting limitations known to defendants).

The parties also do not dispute that Rainey had an autoimmune disease that caused kidney disease and required peritoneal dialysis. On the other hand, Rainey claims he was healthy and able

11

to perform his duties of the light products transport driver with or without accommodation. *See* R. Doc. 1 at 8. He does not allege that dialyzing might interfere with his duties but instead states that if it did that there were reasonable accommodations available that would have allowed him to perform his job. *Id.* at 6. The complaint further fails to allege how Rainey's autoimmune kidney disease or dialysis requirement substantially limited one or more major life activity and therefore constituted a disability under applicable law. Based on these allegations, there was nothing for Marathon to reasonably accommodate, so Plaintiff fails to state a claim upon which relief could be granted. The Marathon's **Motion to Dismiss is GRANTED** as to the failure to accommodate claim. Rainey, however, will be allowed to Amend his complaint no later than 20 days from the signing of this order. *See Torres v. Cornerstone Fitness Tx, LLC*, No. 5:22-cv-01190, 2023 WL 11844983, at *3 (W.D. Tex May 9, 2023) (dismissing Plaintiff's ADA claims but allowed her to amend her complaint).

### C. 'Regarded As' Claim

Marathon also seeks dismissal of Rainey's claim that he was "regarded as" disabled. R. Doc. 8-1 at 11. According to Marathon, this claim should be dismissed because the ADA's "regarded as" prong applies only to individuals who are not actually disabled but who are perceived by their employer as having a physical or mental impairment. *Id.* Marathon claims that Rainey "affirmatively alleges that he was disabled – citing a life-threatening renal condition that required daily dialysis." *Id.* As such, Marathon maintains that Rainey cannot allege to be disabled and simultaneously assert a "regarded as" claim because the "regarded as" theory is only reserved for those who are not disabled. *Id.* at 12.

Rainey contends that he has plausibly alleged that Marathon and its employers were biased because they regarded Rainey as more disabled than he really was because of his kidney

disease and related treatment. R. Doc. 17 at 22; R. Doc. 1 at 15. Rainey therefore contends that his well-pled allegations are at least plausibly viable at this stage of the case. *Id.* at 23.

Plaintiffs, who are not defined as disabled under the 42 U.S.C. § 12102(2), nonetheless can be regarded as disabled for having an impairment, and Plaintiff's may file suit under the ADA. *See Hale v. King,* 642 F. 3d 492 (5th Cir. 2011). "To meet this standard, a plaintiff must show either that '(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.'" *Id.*

Rainey alleged Marathon, through the decision-making of its medical and human resources employees, revoked Rainey's job offer because they held bias against him because of his kidney disability and associated dialysis treatment protocol. R. Doc. 1 at 8.  Rainey alleged that at all times he was qualified for the light products transport driver position Marathon offered to him.  *Id.* He also alleges that he was "at all times healthy and physically fit enough to perform all the essential job duties of the for the light products transport driver…." *Id.*

He also alleges nothing about his kidney disease or his dialysis precludes him from performing the duties for the light products transport driver position.  *Id.* at 9. Further, he alleged further that nothing about his kidney disease or his dialysis caused him to be a direct threat to himself or his coworkers. *Id.* He likewise alleges that Marathon's decision to withdraw its offer of employment was unreasonable and without any objectively reasonable or reliable medical evidentiary support. *Id.* Additionally, Rainey alleges that he satisfied all DOT regulatory requirements to be deemed physically to drive a commercial motor vehicle codified at 49 C.F.R. § 391.41. *Id.* at 6-7

Rainey therefore claims that Marathon's actions show both direct and circumstantial evidence of disability-based animus. R. Doc. 1 at 15, ¶57. In the absence of any objective, medical or other credible reason to revoke Rainey's offer and combined with physician assistant's written admission that he failed Rainey because of his kidney disease and dialysis treatment, Rainey maintains the only plausible explanation is that Marathon and its employees revoked Rainey's offer because they did not want to hire or work with Rainey based on his kidney related disabilities and impairments. *Id.* Taken Rainey's allegations as true, Rainey states a claim for "regarded as" ADA discrimination. Therefore, the **Motion to Dismiss is DENIED** as to the "regarded as" discrimination claim.

### IV.    <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion to Dismiss (R. Doc. 8)** is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS GRANTED WITHOUT PREJUDICE** to the extent Marathon seeks dismissal of the Failure to Accommodate claim. Rainey, however, will be allowed to amend his complaint **<u>no later than 20 days from the signing of this Order.</u>**

**IT IS DENIED** to the extent Marathon seeks to dismiss Rainey's claims on grounds that (1) he is not a qualified individual or (2) fails to state to a "Regarded As" claim.

New Orleans, Louisiana, this 17th day of June 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

14