**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRODERICK K. RAINEY** | **CIVIL ACTION** |
| **VERSUS** | **NO:    25-2047** |
| **MARATHON PETROLEUM COMPANY LP** | **SECTION: KWR** |

<u>**ORDER AND REASONS**</u>

Before the Court is **Marathon Petroleum Company LP's Motion for Reconsideration of the June 17, 2026, Order and Reasons or in the Alternative, for Certification of Interlocutory Appeal and to Stay Proceedings Pending Appeal**. ( R. doc. 21).  The Motion is opposed. (R. doc. 27)  Marathon filed a reply.  ( R. doc. 28.)

**I.    <u>Introduction</u>**

**A.  Factual Summary**

Plaintiff, Broderick K. Rainey, ("Rainey") suffers with chronic kidney disease and IgM nephropathy, an autoimmune disorder that causes kidney damage and related problems. R. Doc. 1 at 4.  Rainey treated his nephropathy through a combination of medication, regular doctor's visits for blood work, and self-administered peritoneal dialysis once per day either manually or using a portable machine. *Id.* at 5.

Rainey was to begin employment with Marathon Petroleum Company LP ("Marathon") in 2023 as a professional light product transport driver in Garyville, Louisiana. R. Doc. 1 at 3, ¶¶8. According to the Complaint, his full-time employment was conditioned upon him passing a pre-employment physical. *Id.* at 6, ¶29. On April 12, 2023, Marathon rescinded his job offer claiming he failed the pre-employment physical. *Id.* at 7, ¶36.

On November 8, 2023, within 300 days of the revocation of Rainey's employment offer he filed an EEOC Charge of Discrimination.[1] *Id.* at 3, ¶12. On July 3, 2025, the EEOC issued a notice of right to sue. *Id.*, ¶13.

Rainey alleged that his condition was well controlled with dialysis and therefore did not limit his ability to perform all the essential duties of the job offered by Marathon. R. Doc. 1 at 5, ¶22. Rainey also alleges that he was medically cleared to work in his job assignment and that he did not have any restrictions. *Id.*, ¶23-24. Alternatively, Rainey alleges that he was capable of performing the job with reasonable accommodations of periodic rest breaks and time off to attend routine doctor's appointments or perform dialysis on himself between shifts. *Id.*, ¶28. Rainey alleges that he objectively and medically passed the pre-employment physical and satisfied all DOT regulatory requirements to be deemed physically qualified to drive a commercial vehicle. *Id.* at 6-7, ¶31-32.

Rainey contends that his job offer was revoked due to bias against his kidney disease and dialysis treatment protocol. *Id.* at 7, ¶¶34-36. Rainey claims that Marathon accepted the physician's assistant's examination report without objective or medical substantiation. *Id.* at 34-36, ¶13. Rainey after the alleged discrimination, suffered significant out of pocket expenses, damages, costs and attorney's fees. *Id.* at 11, ¶47.  He filed the instant suit against Marathon under the Americans with Disabilities Act on September 30, 2025. *See* R. Doc. 1.

**B.  Subject Motion**

Marathon filed the subject motion seeking a review of the Court's denial of its Motion to Dismiss Rainey's ADA disability claim and "regarded as" claim. Marathon contends that the Court committed  four errors.  First, it contends that the Court's distinguishing of  *Williams v. J.B. Hunt*

---

[1] The EEOC field office has a work sharing agreement with the Louisiana Commission on Human Rights ("LCHR"). R. Doc. 1. LCHR automatically accepted the filing and referred it to EEOC for processing.

*Transport, Inc.,* 826 F. 3d 806 (5th Cir. 2016) was improper because it was based on a purported categorical/non-categorical distinction not found in the Federal Motor Carrier Safety Regulations. Second, Marathon contends that the Court wrongly relied upon *Rodrigues v. ConAgra Grocery Products Co.*, 436 F.3d 468, 477 (5th Cir. 2006) because it is a *pre-Twombly/Iqbal* summary judgment decision that was outside the DOT medical-certification framework.

Third, it contends that the reference to the individualized assessment doctrine invoked in the Order predated the regulations and substitutes judicial second-guessing for a quality-control judgment the Order never engaged. Finally, Marathon contends that the Court's refusal to apply *Williams* at the Rule 12(6) stage is irreconcilable with *Turner v. BNSF Railway Company*, 138 F.4th 224 (5th Cir. 2025), which affirmed dismissal at the pleading stage on the same predicate facts Rainey asserts here.  Alternatively, Marathon seeks permission to file an interlocutory appeal regarding the legal questions are genuinely debatable rather than clearly erroneous and satisfies the "substantial grounds for difference of opinion.  An additional issue raised by Marathon is that the Court referenced a nonexistent regulation.

## II.    <u>Standard of Review</u>

The Fifth Circuit has noted that the Federal Rules "do not recognize a 'motion for reconsideration' in haec verba." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir.1990). However, the Court has consistently recognized that such a motion may challenge a judgment or order under Federal Rules of Civil Procedure 54(b), 59(e), or 60(b). Rules 59 and 60, however, apply only to final judgments. *Id.*  Therefore, when a party seeks to revise an

order that adjudicates fewer than all the claims among all of the parties, Federal Rule of Civil

Procedure 54(b) controls. [2]

The Rule states:

> [A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities. Fed. R. Civ. P. 54(b).

Under Rule 54(b), the district court "possesses the inherent procedural power to

reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient."

*Melancon v. Texaco, Inc.,* 659 F.2d 551, 553 (5th Cir. 1981). However, this broad discretion must

be exercised sparingly in order to forestall the perpetual reexamination of orders and the resulting

burdens and delays. *Id.* Further, the decision of the district court to grant or deny a motion for

reconsideration will only be reviewed for an abuse of discretion. *Martin v. H.M.B. Constr. Co.,*

279 F.2d 495, 496 (5th Cir. 1960) (citation omitted). *See also Garcia v. Woman's Hosp. of Tex.,*

97 F.3d 810, 814 (5th Cir. 1996).

The general practice of courts in this district has been to evaluate Rule 54(b) motions

to reconsider interlocutory orders under the same standards that govern Rule 59(e) motions to alter

or amend a final judgment. *Id.* A Rule 59(e) motion "calls into question the correctness of a

judgment," *Gulf Fleet Tiger Acquisition, L.L.C. v. Thoma-Sea Ship Builders, L.L.C.,* 282 F.R.D.

146 ( E.D. La. 2012) and courts have considerable discretion in deciding whether to grant such a

motion. *Id.* In exercising this discretion, courts must carefully balance the interests of justice with

---

[2] Fed. R .Civ. P. 54(b). *See also Helena Labs. v. Alpha Scientific Corp.,* 483 F.Supp.2d 538 (E.D. Tex. Apr. 20, 2007) (motion for reconsideration under Rule 59(e) treated as under Rule 54(b) because reconsideration of partial summary judgment order was sought and no final judgment had yet been entered in the case).

the need for finality. *Id.*  Courts in the Eastern District of Louisiana have generally considered four factors in deciding a motion under the Rule 59(e) standard:

> (1) the motion is necessary to correct a manifest error of law or fact upon which the judgment is based;
> (2) the movant presents newly discovered or previously unavailable evidence;
> (3) the motion is necessary in order to prevent manifest injustice; or
> (4) the motion is justified by an intervening change in controlling law.

*See, e.g., Castrillo v. American Home Mortg.*, No. 09-4369, 2010 WL 1424398 at *4 (E.D. La. Apr. 5, 2019) (citations omitted).

Although Rules 59 and 60 set forth specific time frames during which reconsideration may be sought, Rule 54 sets forth no such limitation. *Id.*  However, importantly, Rule 54(b) motions, like those under Rules 59(e) and 60(b), are not the proper vehicle for rehashing evidence, legal theories, or arguments.  Instead, they "serve the narrow purpose of allowing a party to correct manifest errors of law or fact or to present newly discovered evidence." *Gulf Fleet Tiger,* 282 F.R.D. at 153.

## III.    <u>Analysis</u>

Marathon contends that the legal issue for the Court to decide is whether an employer is required to disregard a determination that an applicant is medically unqualified to drive commercial vehicles hauling highly flammable petroleum products.  Marathon complains that the Court misapplied *Williams v. J.B. Hunt Transport, Inc.* 826 F.3d 806 (5th Cir. 2016), for the proposition that because Rainey failed to pass the examination, he cannot assert an ADA claim.

Marathon contends that because the order did not cite *Turner v. BNSF Ry. Co.*, 138 F.4th 224 (5th Cir. 2025) the Court's order cannot be reconciled with the recent circuit opinion. Additionally, Marathon suggests that the Court applied an "individualized assessment", relying on *Rodrigues v. ConAgra Grocery Products Co.*, 436 F.3d 468 (5th Cir. 2006),  an opinion which

5

predates *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) , the conclusion would be foreclosed by *Iqbal* and the Court did not apply *Iqbal.*

According to Marathon, the Court wrongly credited plaintiff's bare allegation that the examiner lacked medical justification without requiring any supporting factual content. In its reply, Marathon points out that the Court relied upon a non-existent regulation in its ruling requiring the medical examiner to explain its decision. R. doc. 28.

Rainey contends that Marathon's motion is moot because it has filed its Amended Complaint which alleges that at the time Marathon revoked his offer,  he already possessed a valid medical certification issued to him by a federally certified DOT medical examiner, Dr. Joseph J. Patrick M.D. R doc. 22, ¶17a.  Rainey also contends that Marathon's rehashed legal arguments lack merit because it adds nothing new to the opinion. *Id.* Rainey further contends that each of Marathon's arguments fail for various reasons. *Id.*

Considering the importance of the issue presented, the Court will reconsider its Order of June 17, 2026.  Marathon contends that the "individualized assessment" doctrine referenced in the undersigned's Order predates the Federal Motor Carrier Safety Administration's ("FMCSA") 2012 National Registry of Certified Medical Examiners. R. doc. 21. The Rule, according to Marathon, transformed the DOT medical certification into a federally mandated, competency-tested, nationally standardized framework which if not complied with amounts to a bar from asserting a ADA claim.

The FMCSA provides safety oversight to commercial motor carriers, and under FMCSA regulations, a motor carrier may not allow a driver to operate a commercial motor vehicle if the driver may suffer from an impairment that makes it unsafe for her to operate the vehicle. Doc. 41-1 at 3 (citing 49 C.F.R. § 392.3). To comply with that requirement, the employer must generally

6

adhere to the FMCSA Medical Guidelines regarding drivers' qualifications. *Id.* FMCSA review is merely a process for resolving disputes between medical examiners about a driver's physical qualifications. There is no mandatory exhaustion requirement for an ADA plaintiff in the Fifth Circuit. *See Williams v. J.B. Hunt Transport,* 826 F.3d 806 (5th Cir. 2016) ( where the Court held no statute requires an ADA plaintiff exhaust the §391.47 process before filing a lawsuit nor does it do so in jurisdictional terms); *see also Bangura v. Hansen,* 434 F.3d 487 (6th Cir. 2016) ("Plaintiffs' failure to exhaust their administrative remedies does not deprive this court of subject matter jurisdiction over Plaintiffs' APA claims ... [because] [w]here an intra-agency appeal is optional ... the APA does not require a plaintiff to appeal prior to filing suit in federal court").

### A.    <u>Categorical/ Non-Categorical Distinction</u>

Marathon complains that the Court denied its request for dismissal based on an express distinction between the condition the claimant had in *Williams* and Rainey's kidney disease which constitutes error. Marathon claims that there is no such distinction based on the regulations. R. doc. 21-1. Marathon also claims namely that its ME <u>could</u> have relied upon §391.41(b)(9) which it suggests is precisely what occurred here: the examiner evaluated Plaintiff's end-stages renal disease and daily peritoneal dialysis and found that he was not physically qualified. *See* R.doc. 21, P. 7.

Rainey contends that the Court's finding that the regulations did not automatically disqualify Rainey's condition is textually correct. Rec. doc. 27. Rainey contends that the Federal Motor Carrier Safety Administrations, Medical Examiner's handbook does not require automatic disqualification for drivers suffering from kidney disease. *Id.*

Under the ADA, an employer may apply "qualification standards" for a position as long as those standards are "job-related and consistent with business necessity." 42 U.S.C. § 12113(a).

More specific to the case at bar, courts have consistently held that an employment action based upon an employee's or prospective employee's inability to satisfy DOT medical standards does not violate disability discrimination laws. *See Albertson's Inc. v. Kirkingburg*, 527 U.S. 555, 573, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999) (holding that an employer may, consistent with the ADA, apply DOT's physical qualification standards to its employees); *Campbell v. Federal Express Corp.,* 918 F.Supp. 912 (D. Md. 1996) (holding it is "undisputable that [the defendant employer] may rely on DOT regulations as a defense to an ADA discrimination claim").

Marathon contends that the Court in relying on the regulations medical classification was error when it determined that it was not clear if the physician's assistant complied with the regulations regarding dialysis. R. doc. 21-1. Instead, Marathon uses a category set forth in §391.41(b)(9). This section of the regulation provides §391.41(b)(9) has no mental, nervous, organic, or **functional disease** or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely. *Id.*

However, suggesting that the physician's assistant used §391.41(b)(9), is no less a class/ category or type of disease. Regarding the usage of this section as proposed by Marathon, the Court located two cases that give guidance on its usage. Notably, Marathon cites to none referring to §391.41(b)(9). Furthermore, nor does the complaint refer to this category/classification of condition other than dialysis.

Regulations issued by the Department of Transportation ("DOT") provide that a person shall not drive a commercial motor vehicle if he or she has a "mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive a commercial motor vehicle safely." 49 C.F.R. § 391.41(a), (b)(9). Doctors who perform the exam

must be familiar with the physical and mental demands associated with driving a commercial motor vehicle.

Part of the exam is to "detect the presence to physical, mental, or organic defects of such a character and extent as to affect the applicant's ability to operate a commercial motor vehicle safely." 49 C.F.R. § 391.47.  For example, in *Madonia v. Mavo Leasing,* No. 98-601, 2000 WL 420743 (N.D. Ill., Eastern Div. Apr. 13, 2000) plaintiff, a truck driver whose arm and back were injured by a malfunctioning power jack and who inhaled antifreeze fumes at work, began having outbursts at work. After his emotional outburst, he was terminated. Applying §391.41(b)(9), the plaintiff was denied a certification because it was determined that he was suffering major depression and related paranoia due to the fear that he was being poisoned by antifreeze. After resolving his grievance and reinstatement to work, his lack of self-control returned and he was terminated. Later, plaintiff filed suit.

The only other instance that the Court found using §391.41(b)(9) is *Vaughn v. FedEx Freight, Inc*., 421 F. Supp.3d 1302 (N.D. Ala., NW Div. Oct. 10, 2019) where the issue was whether a driver who had a "brief psychotic break" could return to work.  The court in *Vaughn* noted that before the medical exam, the doctor was sent an email with the FMSCA Medical Guideline regarding major depression (a category) and the driver's attempted suicide.

Section 391.41(b)(9)  has been used for mental disorders not dialysis. Whether the medical examiner relied on §391.41(b)(9) as Marathon suggests, is not clear from the record before the Court. Practically speaking, the regulations may be applied once the disease category is identified and thereafter to consider the functional limitations based on the condition. *See* R.doc. 21, P. 7. This basis for reconsideration alone does not warrant reversal.

### B.   Williams and Turner: the Conflict?

### *i.*   Williams v. J.B. Hunt

Marathon next contends that the Court should dismiss Rainey's ADA claim because Rainey failed to follow the certification guidelines for operation of a commercial vehicle as he was required to follow the procedures set forth in 49 C.F.R. § 391.47, governing "Resolution of Conflicts of Medical Evaluation." Specifically, Marathon contends that Rainey should have sought resolution of conflicts of medical evaluation pursuant to 49 C.F.R. § 391.47. While principally that rule is correct, whether it applies at this stage of the litigation is the question.  Marathon contends that the Court can take their suggestion that Rainey did not exhaust and dismiss his complaint at the pleading stage. However, as explained below, *Williams* and *Turner* do not stand for this proposition without needing evidence beyond the pleadings.

In the district court in *Williams v. J.B. Hunt Transp., Inc.,* No. 13-CV-02510 (S.D. Tex., Houston Div. Sept. 22, 2015), the matter was originally before Judge Harmon on a Motion to Dismiss, and in the Alternative, Motion for Summary Judgement.[3]  *See* 13-CV-02510,  R. doc. 27, 09/22/15.  According to the opinion, Williams was a First Seat Truck driver for the J.B. Hunt Transport, Inc. who took temporary leave from work and obtained medical  treatment for syncope and ventricular  tachycardia,  which  had  been  eliminated  as  a  cause  of  his  fainting  after  he

---

[3] The motion was a twenty two page motion with fifty one(51) pages of exhibits.  The exhibits included a declaration from Todd Davis, the Director of safety for J.B. Hunt Transport, R. doc. 14-1., the J.B. Hunt Transport 2010 Driver Manual Exhibit 14-1, Medical Records ( filed under seal), the Letter from the DOT-doctor rescinding the certification, Communications between J.B. Hunt and Williams regarding his certification, the Leave of Absence Policy and Williams deposition. R. doc. 14-3, Williams application for unemployment benefits that he was not able to work R. doc. 14-4. And a copy of *Cliburn v. CUSA KBC, LLC,* 2007 U.D. Dist. LEXIS 86637  addressing a similar issue where the court dismissed the ADA claim and remanded the case to the state court.  In *Cliburn*, the employer did not certify the plaintiff for driving after  reviewing his return-to-duty form, medical exam form and medical records following hospitalization. Also attached to the defendant's motion was a copy of *Myers v. J.B.Hunt Transport*, 2006 U.S. Dist. Lexis 86916.

underwent a heart catheterization. R.doc. 27, 11. Williams claimed that he exhausted his administrative remedies, but the defendant disagreed with respect to his fitness to drive. *Id.*

According to a declaration submitted as evidence, when Williams was hired, he was provided a copy of the DOT's Federal Motor Carrier Safety Regulations ("FMCSR"). *Id.* 23. The Court noted that the defendant's summary of the facts, supported by documents, was more detailed than Williams. *Id. at. 24.* By declaration of Davis the Director of Safey, when Williams missed work due to illness or injury he was required by the rules to have a DOT-certified physician review his physical qualifications and certify him to drive a tractor-trailer before he could return to his job of trucking. *Id*. at. 24. After detailing the conflict in the medical certifications, the district court noted that Williams was seen by another doctor who informed him that his certification was being rescinded.

According to Davis, Williams never gave them any additional medical documentation, nor did he file an appeal application for determination of his medical qualifications pursuant to 49 C.F.R. §391.47. *Id.* Williams was on personal leave of absence after exhausting his FMLA leave and remained until certified to return to work by a DOT physician or until he exhausted his available leave. *Id.* The employer sent six different letters warning Williams that if he could not return to work by the end of his leave time, his employment would be administratively terminated according to policies. *Id.* at. 27.

Williams was never medically certified to return to work because he never took steps to resolve the conflict of opinion between his personal physician and the DOT-Certified physician. After Williams failed to conduct discovery, except participating in a deposition, and based upon the posture of the suit, the defendant claimed that there was no genuine issue of material fact because Williams failed to exhaust. After addressing Williams's failure to exhaust, the lack of

discriminatory animus, and his admission made while seeking unemployment benefits that he could not perform his normal work due to his medical condition, the district court determined that he was not qualified for his job. *Id.* at.32.

Williams appealed the district court's dismissal of his claim. Notably, the appellate court had a copy of the entire district court file when it rendered its decision. The Circuit Court affirmed the district court's grant of summary judgment. In doing so, the Court noted that Williams pointed to no evidence that he ever submitted additional medical documentation to J.B. Hunt or Concentra. The Court also noted that he never filed an application for the DOT to resolve any conflict between medical evaluations pursuant to 49 C.F. R. §391.47. While the Circuit Court reversed on Subject Matter Jurisdiction grounds, the Court reiterated that "no statute required exhaustion." *Id.* (citing *Henderson v. Shinseki,* 562 U.S. 428, 435, 131 S. Ct. 1197, 17 L. Ed. 2d 159 (2011). The Fifth Circuit affirmed on the alternative grounds of summary judgment. As noted, the Court in *Williams* had affirmative evidence of his failure to exhaust which is not present here.

### ii. Turner v. BNSF Railway Company

Next the Court turns to *Turner v. BNSF Railway Company,* Case 4:23-cv-00681-P, (N.D. Tex. June 30, 2023). *Turner* was originally filed in the Northern District of Texas Fort Worth Division before District Judge Mark Pittman. *See* Case 4:23-cv-00681, Rec.doc. 1. According to Turner's complaint, he alleged that the FRA did not require trainmen to have perfect color vision to be licensed but instead recognized that color vision deficiency ranges in severity from mild to severe. *Id.* P.1 According to Turner, the issue was whether an employee who suffered from a color-vision deficiency could safely do his/her job despite the deficiency. *Id.* For a decade and a half, Turner had been tested every three years and alleged that he never misread a railroad signal

while driving a train for BNSF. *Id*. He alleged that the test he was given did not mirror what he must see in the field. However, he failed the test and BNSF revoked his license. *Id.*

Turner filed an ADA discrimination claim after being terminated. Case 4:23-cv-00681, Rec. doc. 21 at 6. In response to the complaint BNSF filed a Motion for Judgment on the Pleadings contending that Turner's complaints belonged with the FRA and its safety expertise, subject only to judicial review of agency action, not with the courts in an original action under the ADA. *Id.* BNSF also suggested as a second basis that Turner cannot show that he is a "qualified individual" within the meaning of the ADA after he failed both the initial and subsequent retests required by "federal safety rules." Therefore, BNSF sought a judgment as a matter of law on the pleadings. *Id.*

The district court required supplemental briefing from the parties. Rec. doc. 27. The court noted that Plaintiff argued that BNSF improperly determined that he failed to meet the FRA's certification requirements based on a faulty and discriminatory field test. *Id.*

After noting that the regulation provided an extensive appeals process, the district court required Turner to supplement his briefing on whether Turner exhausted his administrative remedies with the FRA and whether the Court has subject matter jurisdiction over his ADA claim. *Id.* The Court also required briefing on whether the doctrine of primary jurisdiction weighs in favor of dismissal because the administrative process might resolve a specific contested issue. *Id.*

Turner in his supplemental briefing admitted that he did not appeal to the FRA BNSF's refusal to recertify him. He cited *Williams v. J.B. Hunt Transp., Inc.,* 826 F.3d 806 (5th Cir. 2016) for the proposition that he did not have to do so. He claimed that exhaustion of administrative remedies is not a jurisdictional bar.

In evaluating the motion, the court noted that BNSF contended that the FRA safety regulations preclude Turner's ADA claim and the court agreed. Rec. doc. 30. In so doing the

13

district court noted that while the FRA does not actively participate in conductor testing or certification, it administers the regulation through approval and monitoring of individual railroads 'programs, including their eligibility, training, testing and certification regimens. *Id.* at 3.

The district court noted that Turner argued that BNSF's field acuity test was inadequate and improperly discriminated against him on the basis of disability. *Id.* BNSF suggested that the claim was precluded because Turner did not use the dispute resolution process, notably which Turner admitted on supplemental briefing. *Id.* In finding for the defendant, the district court noted that railroad employees are not deprived of the ADA's rights and protection when either they used the dispute-resolution process or when the claim does not involve the certification decision. *Id.* The district court in *Turner* held that where FRA regulations govern the sufficiency of an employee's recertification testing criteria, an employee cannot challenge the railroad's testing protocol under the ADA.

Additionally, the district court applying *Williams* also concluded that Turner's ADA claim failed because he was not able to show that he is a "qualified individual" for purpose of his prima facia discrimination claim. At issue in *Turner* was whether Turner possessed the requisite job-related requirements of employment, his conductor certification. The district court noted that like in *Williams,* Turner did not seek review and could not show that he could safely perform his duties because he lacked the required certification.

Turner appealed. *Turner v. BNSF Railway Company*, 138 F.4th 224 (5th Cir. 2025). The Fifth Circuit affirmed applying *Williams.* Again, the Circuit Court had the entire record before it which included the supplemental briefing which contained Turner's admission. Notably, although the judge did not say the motion was converted to a summary judgment, he went beyond the pleadings by requiring supplemental briefing as to whether Turner exhausted the available

14

administrative remedies and relied on information beyond the pleadings. After getting an admission by Turner that he did not use the alternative dispute process, the district court in *Turner* followed *Williams* and granted the motion finding that he could not assert an ADA claim.

Reconciling *Williams* and *Turner*, both courts looked beyond the pleadings and had affirmative evidence that neither plaintiff exhausted the available administrative remedies. *Williams* was clearly on summary judgment, and in *Turner*, while it was before the court on a motion for judgment on the pleadings, the district court went beyond the pleadings and required supplemental briefing as to whether Turner used the alternative dispute process to which he admitted that he did not.

There's no evidence that Turner challenged the decision by the district court suggesting that the supplemental briefing amounted to extrinsic evidence beyond the scope of the pleadings. Without the supplemental briefing, the allegations that he failed to exhaust would have been ambiguous requiring a denial.

In this case, Rainey does not allege in his complaint that he used the available review process and nor is he required to do so according to *Williams*. Further, administrative exhaustion is an affirmative defense. *Davis v. Fort Bend Cnty*., 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019). The Court has no information other than Marathon's assertion that Rainey did not exhaust. The Court did not issue an order requiring supplemental briefing like the Court in *Turner* and in fact declined to consider information beyond the pleadings. There is no evidence at present that Rainey failed to exhaust unlike in *Williams* and *Turner*. Therefore, contrary to Marathon's assertion the Court's failure to reconcile in the first instance *Williams* and *Turner* does not render the decision wrong as a matter of law. *See also Rodriguez v. Duffy,* 2025 WL 1218348 (5th Cir. 2025) (plaintiffs are not required to plead facts to

negate an affirmative defense). On the contrary, the Court very ably reconciled the results in *Williams* and *Turner*. The request for reconsideration on this basis is therefore denied.

### iii.    *Iqbal* and *Rodriquez*

Marathon also complains that the order misapplied *Iqbal* when it credited plaintiff's allegation that the examiner lacked medical justification. Marathon contends that the Court's use of *Rodriguez v. ConAgra Grocer Products Co.'s*, 436 F.3d 468 (5th Cir. 2006), individual assessment doctrine constitutes error because it could not be used to credit plaintiff's "bare allegations" according to *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

Marathon's argument is that because *Rodriguez* was decided before the FMCSA promulgation, that somehow its creation forecloses the Court's ability to interpret whether the Company complied with the regulations in denying Rainey's DOT Certification. Marathon also contends that because the regulations have a process of qualifying its examiners, this forecloses the Court's compliance assessment. Notably, Marathon fails to cite any case supporting its argument and the Court has found none. This argument is not persuasive and lacks both regulatory and case law support. Therefore, this basis for reconsideration fails.

Marathon also contends that because the Court used the words "evaluating doctor's assessment" that it did not decide on the pleadings per *Iqbal*. However, the complaint itself indicated that he objectively disqualified Rainey because he had peritoneal dialysis. In other words, the existence of the condition itself was the reason for the disqualification.

In further support, Marathon seems to take issue with the fact that *Rodrigues* was at the summary judgment phase, and the subject case is at the Motion to Dismiss phase. However, the fact that the *Rodriguez* decision was rendered before 2006 does not mean that this Court did not apply *Iqbal* in this case. Even if the individual assessment could not be used as Marathon suggests,

the complaint does state a claim accepting all well pleaded facts as true as explained below. *Iqbal, Id.*

For example, if Rainey's chronic kidney disease is well managed, as alleged in the complaint, but the doctor only referenced the fact that he was on dialysis as basis for not certifying him, in light of his managed disease, the doctor may not have had medical justification for the refusal to certify him. *See* R. doc. 1, Original Complaint ¶21-33. This certainly is a reasonable inference from the complaint that is allowed by *Iqbal.*

Marathon also cites *Smithson v. Union Pacific Railroad Co.,* No. SA- 21-CA-01225-XR, 2026 WL 1499049 (W. D. Tex. May 27, 2026) for the proposition that a plaintiff's disagreement with the employer's application of the regulations cannot be sustained absent exhaustion of the agency's prescribed review process. The Court does not take issue with *Smithson.* However, unlike in *Smithson*, Judge Rodriguez on summary judgment had evidence that the plaintiff failed to exhaust, whereas here, there is no evidence at this stage of the proceedings confirming that Rainey failed to exhaust.[4]  In fact, the record in *Smithson* cites to the plaintiff's testimony that he did not exhaust. [5] The corollary to *Smithson* is that if he did exhaust, then *Rodriquez*'s individual assessment might still be applicable. Here, the Court only has Marathon's contention, but no proof, that the plaintiff failed to exhaust which was present in *Williams, Turner* and *Smithson*. While Marathon's position might ultimately prove to be correct, given the current posture of the case and the lack of evidence of failure to exhaust, a dismissal at this stage would constitute error. Further, the Court finds that the complaint adequately states a claim.

---

[4] *See* 21-CA-01225-XR, Rec. doc. 69.; 69-5 at 3.;
[55] Smithson did not appeal the denial of his FRA certification to the FRA. [Ex. C, Pl. Dep., 78:7-9 (AOE 045); Ex. JJ, McClelland Decl., ¶¶ 7-8 (AOE 342).]

## C.    <u>Nonexistent Regulation; Clarification</u>

In its reply, Marathon raises a new argument as to why the decision is wrong as a matter of law. Marathon points out that the Court relied upon a non-existent regulation to support its finding that there was a question regarding the medical examiners finding that Rainey was disqualified because he was on dialysis. In reviewing the regulations, Marathon is correct that mentioning 391.41(d)(3) was error by the Court albeit potentially having significant implications, the reference is seemingly a typo. However, the Court disagrees that it is a fatal blow to the decision.

Rainey has not submitted a reply to this new issue raised by Marathon in their reply. The Court will therefore proceed with addressing the issue.

As the Fifth Circuit has noted, "generally, neither this court nor the district courts of this circuit will 'review arguments raised for the first time in [a] reply brief.'" *RedHawk Holdings Corp. v. Schreiber*, 836 F. App'x 232, 235 (5th Cir. 2020) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1437 (5th Cir. 1989) (refusing to entertain arguments raised for the first time in appellant's reply brief); *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (district court following the "court's practice of declining to consider arguments raised for the first time in a reply brief")). On occasion, however, a district court may consider arguments and evidence raised for the first time in a reply brief without abusing its discretion "so long as it gives 'the non-movant an adequate opportunity to respond prior to a ruling.'" *Id*. (citing *Thompson v. Dall. City Attorney's Office*, 913 F.3d 464, 471 (5th Cir. 2019) (quoting *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 292 (5th Cir. 2004))).

And while there is no right to file a surreply, and surreplies are "heavily disfavored," a district court abuses its discretion when it denies a party the opportunity to file a surreply in

18

response to a reply brief that raised new arguments and then relies solely on those new arguments it its decision. *Id*. *Compare Warrior Energy Servs. Corp. v. ATP Titan M/V*, 551 F. App'x 749, 751 n.2 (5th Cir. 2014) (noting that courts "heavily disfavor[ ]" surreplies), *and Austin*, 864 F.3d at 336 (finding that the district court did not abuse its discretion by denying a party's motion to file a surreply because the other party "did not raise any new arguments in its reply brief"), *with Conroy v. Vilsack*, 707 F.3d 1163, 1179 n.6 (10th Cir. 2013) (citing *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1191–92 (10th Cir. 2006) ("Our case law makes clear that a district court abuses its discretion only when it both denies a party leave to file a surreply *and* relies on new materials or new arguments in the opposing party's reply brief.") (alteration in original)).

While the reference was not correct, it was a typo.  Rather than 49 CFR 391.41d(3), the correct and intended citation is 49 CFR 391.41(b)(3) which provides: A person is physically qualified to drive a commercial motor vehicle if that person-….(b)(3) Has no established medical history or clinical diagnosis of diabetes mellitus currently treated with insulin for control, unless the person meets the requirements in § 391.46. Section 49 CFR 391.46 provides (a) Diabetes mellitus treated with insulin. An individual with diabetes mellitus treated with insulin for control is physically qualified to operate a commercial motor vehicle and then proscribes the circumstances in which when a person would be qualified to drive.

According to the  FMCSA's medical standards in 49 CFR Part 391.41, a driver must not have any medical condition that interferes with their ability to operate a CMV safely. While kidney disease is not singled out with a specific pass/fail standard the way vision or blood pressure is, it falls under the broader category of conditions that must be evaluated based on their impact on overall health and driver safety.

The FMCSA's Medical Examiner Handbook provides guidance to certified DOT medical examiners on how to evaluate drivers with various conditions, including renal (kidney) disease and end stage renal disease. *See FMCSA's Medical Examiner Handbook,* www.fmcsa.dot.gov (2024) Section 391.41 does not include a physical qualification standard that specifically addresses end stage renal disease or renal dialysis. Accordingly, the effects of renal dialysis should only be evaluated as part of the underlying medical condition for which it is prescribed. *Id.* at 76.

The regulations do not speak to a claimant such as Rainey; a person who does not use insulin but is instead on dialysis. According to the medical examiner's handbook a medical examiner should evaluate end stage renal disease and renal dialysis on a case-by case basis under the most applicable physical qualifications standard.

The stated reason by the ME for declining the certification was "ESRD/Peritoneal Dialysis which according to the regulations does not serve as a bar to certification. Therefore, applying *Iqbal* to plaintiffs claim and considering the facts as alleged in the complaint, Rainey alleges that PA Ghahramani unreasonably and without any medical justification failed Rainey on his pre-employment physical because of Rainey's end stage renal dialysis ("ESRD") and peritoneal dialysis. Rec. doc. 1, ¶33.

Rainey further alleges that on April 11, 2023, PA Ghahramani informed Marathon's human resources department that he failed Rainey on his pre-employment physical. *Id*. ¶ 34. Rainey also alleged that on April 21, 2023, DOT advised Rainey, in writing, that "an exemption for either peritoneal or hemodialysis is unnecessary because the Federal Motor Carrier Safety Regulations (FMCSRs) do not have mandatory prohibitions for medical certification of commercial motor vehicle (CMV) drivers who receive dialysis treatments." *Id*. ¶38. Rainey alleges that he forwarded this guidance to Marathon and PA Ghahramani without any substantive response. *Id*. Applying the

20

intended regulatory section 49 CFR 391.41(b)(3), the original opinion is modified to reflect the correct regulatory section, 49 CFR 391.41(b)(3). Otherwise, the request to modify the original decision is denied.

### D.  Alternative Request for Interlocutory Appeal

Regarding Marathon's alternative request that the Court should certify the order for interlocutory appeal and stay the proceedings, that request is Denied. There are no grounds let alone "substantial ground for difference of opinion." *See* 28 U.S.C. § 1292(b).

### IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the **Marathon Petroleum Company LP's Motion For Reconsideration of the June 17, 2026, Order & Reasons, Or In The Alternative For Certification Of Interlocutory Appeal And To Stay Proceedings Pending Appeal ( R. Doc. 21)** IS **GRANTED IN PART AND DENIED IN PART.**

**IT IS GRANTED** to correct the citation to **49 CFR 391.41(b)(3).**

**IT IS DENIED** in all other respects.

New Orleans, Louisiana, this 7th day of August 2026.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**