**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **BRODERICK K. RAINEY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-2047** |
| **MARATHON PETROLEUM COMPANY LP** | **SECTION: KWR** |

**ORDER AND REASONS**

Before the Court is the Defendant Marathon Petroleum Company LP's **Motion to Dismiss Plaintiff's First Amended Complaint (R. Doc. 38)**. The Motion is opposed. R. Doc. 46. A reply was filed. R. Doc. 48.[1]

## I. Introduction

### A. Factual Summary

Plaintiff Broderick K. Rainey ("Rainey") suffers with chronic kidney disease and IgM nephropathy, an autoimmune disorder that causes kidney damage and related problems. R. Doc. 1 at 4. Rainey treated his nephropathy through a combination of medication, regular doctor's visits for blood work, and self-administered peritoneal dialysis once per day either manually or using a portable machine. *Id.* at 5.

Rainey was to begin employment with Marathon Petroleum Company LP ("Marathon") in 2023 as a professional light product transport driver in Garyville, Louisiana. R. Doc. 1 at 3, ¶ 8. According to the Complaint, his full-time employment was conditioned upon him passing a pre-employment physical. *Id.* at 6, ¶ 29. On April 12, 2023, Marathon rescinded his job offer claiming he failed the pre-employment physical. *Id.* at 7, ¶ 36.

[1] While the plaintiff complied by supplementing its position, the subject motion did not require the additional information as the Court anticipated and did not serve as a factor in its decision. R. doc. 49 & 50.

On November 8, 2023, within 300 days of the revocation of Rainey's employment offer he filed an EEOC Charge of Discrimination.[2] *Id.* at 3, ¶ 12. On July 3, 2025, the EEOC issued a notice of right to sue. *Id.* ¶ 13.

Rainey alleges that his condition was well controlled with dialysis and therefore did not limit his ability to perform all the essential duties of the job offered by Marathon. *Id.* at 5, ¶ 22. Rainey also alleges that he was medically cleared to work in his job assignment and that he did not have any restrictions. *Id.* ¶¶ 23-24. Alternatively, Rainey alleges that he was capable of performing the job with reasonable accommodations of periodic rest breaks and time off to attend routine doctor's appointments or perform dialysis on himself between shifts. *Id.* at 6, ¶ 28. Rainey alleges that he objectively and medically passed the pre-employment physical and satisfied all DOT regulatory requirements to be deemed physically qualified to drive a commercial vehicle. *Id.* at 6-7, ¶¶ 31-32.

Rainey contends that his job offer was revoked due to bias against his kidney disease and dialysis treatment protocol. *Id.* at 7, ¶¶ 34-36. Rainey claims that Marathon accepted the physician's assistant's examination report without objective or medical substantiation. *Id.* After the alleged discrimination, Rainey suffered significant out-of-pocket expenses, damages, costs, and attorney's fees. *Id.* at 11, ¶ 47. He filed the instant suit against Marathon under the Americans with Disabilities Act on September 30, 2025. *See* R. Doc. 1.

### B. The Amended Complaint

Rainey filed an Amended Complaint on July 7, 2026. R. Doc. 22. Attached to the complaint is the medical examiner's report demonstrating that functional disease as the reason for his failure to pass the examination. *Id.* at 44. Rainey claims that he was subjected to disparate treatment

[2] The EEOC field office has a work sharing agreement with the Louisiana Commission on Human Rights ("LCHR"). R. Doc. 1. LCHR automatically accepted the filing and referred it to EEOC for processing.

because of marathon's alleged failure to accommodate. *Id.* at 20. Rainey alleges that his impaired kidney functions constituted an impaired "major life activity" under the ADA, and the fact that Rainey would eventually die without daily peritoneal dialysis treatments or a kidney transplant likewise constituted an impairment under the ADA. *Id.* at 23, ¶ 56. According to Rainey, Marathon through its officers knew these facts. *Id.* Rainey alleges in the alternative that Marathon revoked Rainey's offer because Marathon and its employees regarded Rainey as more disabled than he really was. *Id.* at 25, ¶ 58.

Rainey further alleges that he already held a valid medical examiner's certificate that cleared him to drive trucks notwithstanding his kidney disease and dialysis at the time of Marathon's medical examination. *Id.* at 10, ¶ 31. Rainey alleges that he satisfied all DOT regulatory requirements to be deemed physically qualified to drive a commercial motor vehicle codified at 49 C.F.R. § 391.41 *et seq*. *Id.* ¶ 32. Rainey alleges that PA Ghahramani gave no explanation why he believed Rainey's kidney disease or peritoneal dialysis made him medically unfit to drive a commercial truck under the Federal Motor Carrier Safety Regulations ("FMCSRs"). *Id*. ¶ 33.

Rainey alleges that Marathon's human resources department unreasonably accepted PA Ghahramani's report without any objective or medical basis whatsoever or were simply biased against Rainey based on or because of his disabilities and impairments. *Id*. ¶ 33. Rainey alleges that at both the time PA Ghahramani examined Rainey on March 22, 2023, and when Ghahramani signed his certification on May 2, 2023, Rainey was still covered by his prior medical examiner's certificate issued by Dr. Joseph Patrick on July 27, 2022 (*see* Exhibit A-1). *Id.* at 12, ¶ 38c. Rainey alleges that he held a bona fide medical examiner's certificate to drive a commercial motor vehicle

under the FMCSRs issued by Dr. Patrick on July 27, 2022, valid for two years through July 27, 2024 (*see* Exhibit A-1). *Id*. at 13, ¶ 41.

Rainey alleges that he forwarded to both PA Ghahramani and Marathon's human resources officer, Josh Conley, correspondence from the Federal Motor Carrier Safety Administration ("FMCSA") that explicitly opined that the FMCSRs did not include any "mandatory prohibitions for medical certification of commercial motor vehicle (CMV) drivers who receive dialysis treatments." *Id.* at 16, ¶ 43. Rainey alleges that the decision-making of Marathon's human resources employees to revoke Rainey's offer based on PA Ghahramani's decision-making was wholly unreasonable and without any objectively reasonable or reliable medical evidentiary support. *Id.*

Rainey alleges that he was a qualified individual with a disability under the ADA, and that Marathon—through the actual knowledge of its medical examiner, PA Ghahramani, and its human resources officer, Josh Conley—knew of Rainey's disability, impairments, limitations, and required medical treatment. *Id.* at 23, ¶ 56. Rainey also alleges that his impaired kidney functions constituted a "major life activity" under the ADA. *Id.* Rainey alleges that the fact that he would eventually die without daily peritoneal dialysis treatments or a kidney transplant likewise constituted an impairment under the ADA and that Marathon through its officers knew these facts. *Id.*

Rainey also alleges that his treating nephrologist communicated with PA Ghahramani and, to the best of Rainey's understanding, opined that Rainey's kidney disease was well controlled through daily peritoneal dialysis. *Id*. at 23-24, ¶ 56. Rainey forwarded correspondence from the FMCSA to Ghahramani and Marathon's human resources officer opining that the FMCSRs did not contain any mandatory prohibitions for dialysis. *Id.*

Rainey alleges that Marathon also unlawfully denied him employment because it believed that Rainey would occasionally need modified truck-driving schedules so that he could self-administer his daily peritoneal dialysis. *Id.* at 25, ¶ 60. Rainey also alleges in the alternative that he may have required such accommodation. *Id.* Finally, Rainey alleges that Marathon is liable to him for damages arising from its unlawful discrimination and refusal to accommodate his disability and impairment. Rainey therefore seeks lost back wages, lost future wages, reinstatement, compensatory damages, punitive damages, litigation costs, reasonable attorney's fees, and all other relief to which he is entitled. *Id.*

## II. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

"Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A claim is plausible on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Although a court must liberally construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, courts do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions. *Warner v. Hutson*, No. 23-2981, 2023 WL 6880434, at *3 (E.D. La. Oct. 18, 2023) (internal citations omitted).

The United States Supreme Court has explained the facial plausibility standard in detail:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

In determining whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Id.* at 679. Thus, as mentioned above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 677-78 (quoting *Twombly*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id.*

On a Rule 12(b)(6) review, although generally the court may not look beyond the pleadings, the court may examine the complaint, documents attached to the complaint, and documents attached to the motion to dismiss to which the complaint refers and which are central to the plaintiff's claim(s), as well as matters of public record. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994); *see also United States ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003) ("the court may consider ... matters of which judicial notice may be taken"). Taking judicial notice of public records directly relevant to the issue in dispute is

proper on a Rule 12(b)(6) review and does not transform the motion into one for summary judgment. *Funk v. Stryker Corp.*, 631 F.3d 777, 780 (5th Cir. 2011).

## III. Analysis

Marathon contends that the Amended Complaint should be dismissed because Rainey is not and cannot be a qualified individual with a disability. R. Doc. 38-1. Marathon contends that Rainey's failure to satisfy DOT medical certification standards precludes an ADA claim. *Id.* at 5. Marathon contends that Rainey's Failure to Accommodate claim must be dismissed. *Id.* Marathon contends that Rainey's alternative "Regarded As" claim fails as a matter of law. *Id.*

Rainey contends that this is Marathon's third motion to dismiss Rainey's complaint pursuant to Rule 12(b)(6). R. Doc. 46. Rainey contends that Marathon adds no new arguments to the merits and merely rehashes the exact same arguments this Court already rejected as legally insufficient under Rule 12(b)(6). *Id.* Rainey contends that he already had a valid and unexpired DOT-issued medical certificate issued by a DOT-licensed medical examiner (Dr. Joe Patrick, M.D.) to drive commercial trucks despite his kidney disease and dialysis. Nevertheless, Marathon insisted that he undergo an in-house physical exam anyway. *Id.*

Rainey further contends that each of Marathon's arguments fail for various reasons. *Id.* Rainey contends that Marathon was biased against him based on his disability despite any objective medical evidence to the contrary. He also contends that Marathon chose to use its own employee rather than an independent third-party to examine Rainey. *Id.* Rainey contends that the Court cannot dismiss his case (at least not at the pleading stage) based on its own employee's allegedly biased and discriminatory misconduct. *Id.*

A. **<u>Qualified Individual with a Disability</u>**

Marathon contends that Rainey's own allegations establish that he was not a qualified individual with a disability as defined by the ADA. R. Doc. 38-1. Marathon contends that Rainey's allegations and the documents attached to his First Amended Complaint affirmatively demonstrate that he was categorically disqualified under federal regulations governing commercial motor vehicle drivers. Marathon contends that Rainey's inability to satisfy DOT medical certification requirements renders him unqualified as a matter of law, irrespective of any accommodations. *Id.* Therefore, according to Marathon, Rainey's First Amended Complaint should be dismissed with prejudice. *Id.*

Rainey addresses Marathon's argument that he admits in his own amended complaint that Marathon's in-house physician assistant failed him medically because Rainey's kidney disease was "likely to interfere with [his] ability to drive a commercial motor vehicle safely." R. Doc. 46. Rainey argues that he made no such allegation in his amended complaint. *Id.*

The FMCSA provides safety oversight to commercial motor carriers, and under FMCSA regulations, a motor carrier may not allow a driver to operate a commercial motor vehicle if the driver may suffer from an impairment that makes it unsafe for her to operate the vehicle. 49 C.F.R. § 392.3. To comply with that requirement, the employer must generally adhere to the FMCSA Medical Guidelines regarding drivers' qualifications. *See* 49 C.F.R. § 391.11; 49 C.F.R. § 391.41. FMCSA review is merely a process for resolving disputes between medical examiners about a driver's physical qualifications. 49 C.F.R. § 391.47.

A disabled individual is qualified for the job in question if, inter alia, he can perform the essential functions of the job with or without reasonable accommodation. *Gonzales v. City of New Braunfels*, 176 F.3d 834, 837 (5th Cir. 1999). "Essential functions" are those duties that are

fundamental to the job at issue"; the term does not include the marginal functions of the position. *Kapche v. City of San Antonio*, 176 F.3d 840, 843 (5th Cir. 1999); 29 C.F.R. § 1630.2(n)(1). The EEOC implementing regulations provide that "[a] job function may be considered essential" if, for example, "the reason the position exists is to perform that function." 29 C.F.R. § 1630.2(n)(2)(i).

Under 49 C.F.R. § 391.11, "[a] person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle." As a result, "a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle." *Id.* To be deemed "physically qualified" is an additional requirement in accordance with the FMCSR's "Physical Qualifications and Examinations" provision. 49 C.F.R. § 391.11(b)(4); *see also* 49 C.F.R. §§ 391.41—391.49.

To drive commercially, an applicant must either pass the physical examination or obtain a formal medical variance from the FMCSA under 49 C.F.R. § 391.41(a)(3)(ii). Likewise, an individual is not physically qualified if they suffer from a condition that is "likely to interfere with his/her ability to drive a commercial motor vehicle safely." 49 C.F.R. § 391.41(b)(9).

Plaintiff concedes that at the time he sought employment with Marathon, he suffered from a chronic and life-threatening kidney disease which required self-administered daily dialysis. R. Doc. 22 at ¶¶ 18–21. He further admits that a DOT-certified medical examiner evaluated him and found him medically unqualified as a result. *Id.* at ¶ 33. The DOT-certified medical examiner's report attached to the First Amended Complaint confirms that Plaintiff failed to pass the physical examination due to this functional disease, specifically, "ESRD/Peritoneal Disease." *Id.* at 44. Because Rainey failed the physical examination, he was not qualified to drive a commercial motor vehicle.

The evidence record shows that on July 27, 2022, Rainey underwent an examination by a DOT-certified medical examiner Dr. Joseph Patrick who noted his renal nephropathy, that it was being treated, and that it was not a problem for driving. R. Doc. 22 at 37. The examiner noted that Rainey required peritoneal dialysis and he had a catheter in place but concluded that it should not make for unsafe driving. *Id.* This certificate was valid through July 27, 2024. However, seven months later, Marathon's DOT-certified medical examiner, Jason Gharamani, examined Rainey on March 22, 2023, and determined that because he required peritoneal dialysis that he was not qualified.

Although a driver may have a medical examiner's certificate, DOT regulations establish that a motor carrier is not required to treat the certificate as determinative of whether the driver is physically qualified to drive. 49 CFR § 391.47. One way in which they do that is to create a mechanism by which to resolve disagreements between a carrier's physician and a driver's physician about the driver's qualification to drive. *Id*. It follows then that a carrier may reject a driver's physician's determination that the driver is physically qualified to drive if the carrier's physician reaches a contrary conclusion.

Marathon points out that as the employer with whom the individual seeks employment, it had the discretion to rely on its own DOT-certified examiner's opinion, not the opinion of a prior unrelated examiner. R. Doc. 48 at 4 n.2. Marathon contends that prior medical opinions are immaterial to its determination during its DOT-regulated medical examination, relying on *Harris v. P.A.M. Transp., Inc.*, 339 F. 3d 635, 639 (8th Cir. 2003) (which held that initial certification was of no consequence where second medical examiner determined driver not qualified under regulation). *See also Campbell v. Fed. Express Corp*., 918 F.Supp. 912, 918 (D. Md. 1996) ("In a case where there are conflicting medical evaluations, such as the conflict [the driver] faced

between [two separate companies'] examination outcomes, the driver may submit an application for resolution of the conflict to the [FMCSA]." (emphasis supplied)); *Hill v. Houff Transfer, Inc.*, 2012 WL 5194080, at *3 (E. D. Va. Oct. 19, 2012) (driver's physician "disagree[d]" with third-party physician about his qualifications to remain a commercial truck driver, and thus, "[section] 391.47's procedures appl[ied]").

Based on the allegations in the amended complaint and its attachments, the Court finds that Rainey has failed to state a claim for which relief may be granted. While Rainey contends that he already received a medical certification from a different doctor which was still in effect through July 2024, Marathon was not obligated by the regulations to accept that certification. It had the right and discretion to rely upon its own doctor's conclusions. Rainey has failed to present any case that contradicts this conclusion and the Court was not able to locate any. Therefore, Rainey has failed to establish that he was a qualified individual and therefore he is unable to state a claim for discrimination in violation of the ADA.

B. **<u>Failure to Accommodate Claim</u>**

Marathon contends that Rainey's failure to accommodate claim should be dismissed for lack of any plausible allegation that he requested an accommodation. R. Doc. 38-1 at 8. Marathon points out that while Rainey baldly asserts that "multiple reasonable accommodations existed" or "were available," he fails to allege that he ever actually requested an accommodation. *Id.* at 8-9. Marathon further argues that it had no duty to provide these hypothetical accommodations to assist Rainey to perform a job that he was not qualified for because he did not have a DOT medical card. *Id.*

Rainey acknowledges that the Court previously granted Marathon's motion to dismiss Rainey's failure-to-accommodate claim but gave him leave to amend his suit. Rainey points out

that he alleged in the alternative that his employment offer was revoked because Marathon believed that Rainey would occasionally need modified truck-driving schedules to facilitate his self-administration of daily peritoneal dialysis. Rainey alleges further in the amended complaint that he may have required an accommodation.

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

"[A] plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist v. La., Dep't of Just., Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). However, a plaintiff must plead that the defendant had "actual knowledge that an accommodation is necessary." *J.W. v. Paley*, 81 F.4th 440, 450 (5th Cir. 2023).

Rainey does not allege that dialyzing might interfere with his duties but instead states that if it did that there were reasonable accommodations available that would have allowed him to perform his job. R. Doc. 22 at 25. The amended complaint further fails to allege how Rainey's autoimmune kidney disease or dialysis requirement substantially limited one or more major life activity and therefore constituted a disability under applicable law.

Further, Rainey argues his failure to request an accommodation is irrelevant given that Marathon refused to tell him why it revoked his offer in the first place. Rainey also points out that marathon failed to engage in the interactive process after it was put on notice of his kidney issue and daily self-dialysis. Nevertheless, Rainey fails to allege that Marathon was aware that an accommodation was necessary. Therefore, Rainey's claim that Marathon failed to reasonably accommodate him fails to state a claim upon which relief could be granted. Marathon's **Motion to Dismiss Rainey's claim for failure to accommodate is GRANTED.**

C. **Regarded As Disabled Claim**

Finally, Marathon contends that while Rainey seeks to assert an alternative claim under the ADA that Marathon "regarded him as greater disabled than he really was," his claim fails as a matter of law. R. Doc. 38-1 at 13 (cleaned up). Marathon contends that such a claim can only arise when a person not actually disabled under the ADA is "nonetheless regarded as having such an impairment," citing *Hale v. King*, 642 F.3d 492, 502 (5th Cir. 2011).

Rainey contends that his regarded as claim states a claim and should be allowed to proceed. R. Doc. 46 at 20. Rainey contends that Marathon's decision-makers regarded him as more or differently disabled than he really was. *Id.* Rainey contends that Marathon's argument that Rainey did not "ask" for such an accommodation is irrelevant given that Marathon refused to tell him why it revoked its offer in the first place. *Id.* at 21-22. Therefore, Rainey contends that because Marathon refused to engage in the interactive process after it was put on notice of his "disability" and daily self-dialysis, it should not be allowed to avoid its responsibility to do so. *Id.* at 22.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, . . . discharge of employees, . . .

and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the ADA, a disability is:

(A) a physical or mental impairment that substantially limits one or more of the *major life activities of such individual*;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

According to ADA regulations, "substantially limits" means "unable to perform a major life activity that the average person in the general population can perform; or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Kemp v. Holder*, 610 F.3d 231, 237 (5th Cir. 2010) (citation omitted) (cleaned up); *see also* 29 C.F.R. 1630.2(j)(ii). In contrast, "regarded as" disability claims are grounded in the foundational distinction that the plaintiff's impairment is not substantially limiting. *See Rodriguez v. ConAgra Grocery Prods. Co.* 436 F.3d 468, 479 (5th Cir. 2006).

In order to assert the alternative "regarded as" claim, Rainey must have been a qualified individual who otherwise was denied employment because the employer viewed him as disabled. In this case, Rainey conceded in his amended complaint that he was disabled due to his peritoneal dialysis and was restricted by the condition from engaging in a major life activity.

Further, Marathon's doctor did not certify Rainey as medically able to work. Because Rainey was not medically able to work, the federal safety rules prohibited him from working as a commercial truck driver. Because the federal safety rules prohibited Rainey from working in the

absence of a medical certificate, Marathon could not have violated the ADA as a matter of law. The Court therefore finds that Rainey's "regarded as" claim fails as a matter of law and is dismissed.

## IV. Conclusion

Accordingly,

**IT IS ORDERED** that the **Marathon Petroleum Company LP's Motion to Dismiss Plaintiff's First Amended Complaint (R. Doc. 38) is GRANTED in all respects.**

New Orleans, Louisiana, this 20th day of October 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**